IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**MARLENE MARTINEZ,**

    **Plaintiff,**

vs.                                                                         **No.  01cv0961 DJS**

**JO ANNE B. BARNHART,**
**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## MEMORANDUM OPINION

This matter is before the Court on Plaintiff's (Martinez') Motion to Reverse or in the Alternative, to Remand for a Rehearing **[Doc. No. 8 ]**, filed July 1, 2002.  The Commissioner of Social Security issued a final decision denying Martinez' application for supplemental security income.  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds that the motion is not well taken and will be DENIED.

### I.  Factual and Procedural Background

Martinez, now forty-six years old, filed her application for supplemental security income on January 29, 1992, alleging disability since December 20, 1991, due to a back impairment. Martinez has a ninth grade education and past relevant work as a fast-food counter helper and housekeeper.  Her claim was denied initially and on reconsideration.  On July 28, 1993, after holding an administrative hearing on June 3, 1993, the ALJ denied benefits.  Tr. 134-143.  The ALJ found that, although Martinez had mild degenerative disc disease with a chronic lumbosacral

strain, she had the residual functional capacity (RFC) to perform simple, unskilled routine work at the light exertional level. Tr. 139.  On September 3, 1993, Martinez appealed to the Appeals Council.  Tr. 146-48.  On January 10, 1994, the Appeals Council vacated the ALJ's decision and remanded to allow the ALJ to further evaluate Martinez' subjective complaints pursuant to 20 C.F.R. § 416.929 and Social Security Ruling 88-13 and to give further consideration to Martinez' RFC.  Tr. 149-51.  Additionally, the Appeals Council directed the ALJ to offer Martinez an opportunity for a hearing.  Tr. 151.

On April 12, 1994, the same ALJ held a second administrative hearing.  Tr. 231-257.  On October 7, 1994, the ALJ found Martinez was not disabled because she could perform sedentary work.  Tr. 12-20.  In reaching this conclusion, the ALJ relied conclusively on the Medical-Vocational Guidelines (the grids).  Tr. 19.  Martinez appealed to the Appeals Council.  Tr. 6.  On January 5, 1996, the Appeals Council denied Martinez' request for review of the October 7, 1994 ALJ decision.  Tr. 3.  Martinez then sought judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  *See Martinez v. Chater*, CIV No. 96-0189; Tr. 308-09.  The Commissioner agreed to remand the case to the ALJ after Martinez filed her Motion to Remand. The Honorable James A. Parker entered an Order and Judgment on March 26, 1997.  Tr. 311-12. Judge Parker directed the ALJ (1) to obtain further evidence regarding Martinez' neurological and mental status; and (2) to provide Martinez an opportunity to submit additional evidence, including report and functional assessments from her treating physicians.  Tr. 312.

Upon remand, the same ALJ held a third administrative hearing on January 28, 1998.  Tr. 278-306.  Relying on the testimony of a vocational expert (VE), the ALJ again found Martinez

not disabled. Tr. 266-77. The ALJ found Martinez retained the RFC for work at the light and sedentary levels of exertion. Tr. 272. The ALJ also found Martinez not to be credible. Tr. 270.

On June 17, 1999, Martinez sought judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). *See Martinez v. Apfel*, CIV 99-0676; Tr. 391. In response to Martinez' Motion to Remand, the Commissioner filed an Agreed Motion to Reverse and Remand for Further Administrative Proceedings. Tr. 394. On May 23, 2000, the Honorable Bruce Black entered an Order, recommending that a different ALJ be assigned to the case. Judge Black also directed the ALJ (1) to update the medical evidence regarding Martinez' alleged mental impairments; (2) to reevaluate Martinez' mental impairments pursuant to 20 C.F.R. § 416.920a; and (3) to complete a Psychiatric Review Technique (PRT) form consistent with Martinez' Mental RFC. Tr. 397. Finally, Judge Black directed the ALJ "to articulate a comprehensive rationale for the conclusions reached with specific references to the evidence in support." *Id.*

On April 18, 2001, a different ALJ held a fourth administrative hearing. Tr. 430-454. On August 2, 2001, the ALJ denied benefits, finding that Martinez' impairments, which consisted of "mild degenerative joint disease in the lumbar spine, mild to moderate dysthymia, and a somatoform disorder" were severe but did not singly or in combination meet or equal in severity any of the disorders described in the Listing of Impairments, Subpart P, Appendix 1. Tr. 376. Specifically, the ALJ considered Listings 1.05C[1], 12.04 (Affective Disorders), and 12.07

---

[1] Although the ALJ indicated in his decision that he considered Listing 1.05C, it is clear that he was referring to Listing 1.04 which covers disorders of the spine. The ALJ noted "I find that the claimant's mild degenerative joint disease of the lumbar spine does not meet or equal Listing Section 1.05C." Tr. 376. Listing 1.04C addresses lumbar spinal stenosis. Listing 1.05C addresses amputation of "one hand and one lower extremity at or above the tarsal region, with inability to ambulate effectively."

(Somatoform Disorders). Tr. 376. The ALJ further found Martinez retained the RFC to perform simple, repetitive work at the light exertional level requiring no extensive interaction with supervisors or co-workers. Tr. 377. As to her credibility, the ALJ found that Martinez' was not totally credible. Martinez seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II. Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989). "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from

the ALJ's findings, in order to determine if the substantiality test has been met.  *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity.  *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)).  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  20 C.F.R. § 404.1520 (a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled.  *Thompson v. Sullivan*,  987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

In support of her motion to reverse, Martinez makes the following arguments: (1)  the ALJ's finding that her mental impairment does not meet Listing 12.07 is not supported by

5

substantial evidence and is contrary to law; and (2) the ALJ's credibility determination is not supported by substantial evidence and is contrary to law.

## A. Mental Impairment

When there is evidence of a disabling mental impairment, the Commissioner must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § 416.920a. *Andrade v. Secretary of Health & Human Servs.*, 985 F.2d 1045, 1048 (10th Cir. 1993). Additionally, the ALJ must complete a PRT form and attach it to his written decision. "[T]he record must contain substantial competent evidence to support the conclusions recorded on the PRT form [, and] if the ALJ prepares the form himself, he must 'discuss in his opinion the evidence he considered in reaching the conclusions expressed on the form.'" *Cruse v. United States Dep't of Health & Human Servs.*, 49 F.3d 614, 617-18 (quoting *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Martinez contends the ALJ erred in not finding, at step three of the sequential evaluation process, that she met or equaled Listing 12.07. Listing 12.07 covers somatoform disorders and states:

> **Somatoform Disorders**: Physical symptoms for which there are no demonstrable organic findings or known physiological mechanisms.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
>
> A. Medically documented by evidence of one of the following:
> 1. A history of multiple physical symptoms of several years duration, beginning before age 30, that have caused the individual to take medicine frequently, see a physician often and alter life patterns significantly; or
> 2. Persistent nonorganic disturbance of one of the following:

      a. Vision; or

      b. Speech; or

      c. Hearing; or

      d. Use of a limb; or

      e. Movement and its control (e.g., coordination disturbance, psychogenic seizures, akinesia, dyskinesia; or

      f. Sensation (e.g., diminished or heightened).

3.  Unrealistic interpretation of physical signs or sensations associated with the preoccupation or belief that one has a serious disease or injury; **And**

B.  Resulting in **at least two** of the following:

1.  Marked restriction of activities of daily living; or
2.  Marked difficulties in maintaining social functioning; or
3.  Marked difficulties in maintaining concentration, persistence, or pace; or
4.  Repeated episodes of decompensation, each of extended duration.

Listing 12.07, Listing of Impairments, 20 C.F.R. pt. 404, subpart p, app. 1 (emphasis added).  In his decision, the ALJ found that Martinez met Part A of Listing 12.07, but she did not meet the B criteria of the listing.  Tr. 376.  In order to meet Listing 12.07, Martinez must meet both the A and B criteria.  The ALJ found as follows:

> Ms. Martinez has a fairly wide range of activities of daily living, evidencing at most a moderate limitation under Part B1.  She stated that on a typical day, she does walking exercises and attends to personal hygiene.  She prepares a simple breakfast.  She goes shopping after being driven to the store by her friends.  She washes dishes but does not do laundry and relies on help from her girlfriends.  She stated on August 15, 1997 that she spends her time exercising and cleaning house a little.  However, she stated that she could only clean for short periods of time.  Dr. Lara stated on August 18, 1997 that the claimant had the capability to care for her daily needs.
>
> Pursuant to Part B2, she also has at most a moderate limitation in social functioning.  She has a number of girlfriends.  Although she belongs to no clubs or organizations, she has been able to attend church occasionally with a girlfriend.  She has also been able to maintain a relationship with a boyfriend.

> Pursuant to Part B3, she has at most a moderate limitation in concentration, persistence, or pace. The January 6, 2001 consultative psychiatric evaluation report by Dr. Steven Sacks revealed that the claimant has the ability to understand and carry out short, simple instructions and somewhat more complex instructions. She could maintain the attention required to perform simple, repetitive and somewhat more complex tasks.
>
> Dr. Sacks also found that the claimant had no delusions, hallucinations, or suicidal ideation. There was no flight of ideas, looseness of associations, or blocking. She was oriented to time, place, and person and was in touch with reality. Her remote memory was fair as evidenced by her ability to relate historical information. She was able to remember 3/3 unrelated objects and was able to remember 2/3 unrelated objects after five minutes. She was able to remember a digit span of only five numbers forwards and four numbers backwards. She was able to do addition, subtraction, and division and simple multiplication. She has a Global Assessment of Functioning of 65.
>
> There is no evidence of repeated episodes of decompensation, each of extended duration, pursuant to Part B4.
>
> Thus, the record does not establish that the claimant has at least two Part B criteria at the "marked" level or greater.
>
> I hereby deny the claimant's request for an additional psychiatric evaluation. Such an evaluation is unnecessary and would be merely cumulative in light of the voluminous psychiatric and psychological evidence already in the record in this case. This evidence includes the recent consultative examination report dated January 6, 2001 by Dr. Steven Sacks.

Tr. 376-77 (citations to the record omitted). Martinez takes issue with the ALJ's finding that she does not meet the B criteria as to activities of daily living, level of social functioning, and episodes of decompensation. Martinez does not dispute that she has no problem in maintaining concentration. The Court has reviewed the record and finds that substantial evidence supports the ALJ's finding that Martinez does not meet the B criteria of Listing 12.07.

Under § 416.920a(c)(3), the ALJ rates the degree of a claimant's functional limitations under four broad functional areas: Activities of daily living; social functioning; concentration,

persistence, or pace; and episodes of decompensation.  *See* 20 C.F.R. § 416.920a(c)(3).  Section 416.920a(c)(3) directs the ALJ to 12.00C of the Listing of Impairments.  Section 12.00C addresses the assessment of severity and states in pertinent part:

> C.  Assessment of severity.  We measure severity according to the functional limitations imposed by your medically determinable mental impairment(s).  We assess functional limitations using the four criteria in paragraph B of the listings: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. Where we use "marked" as a standard for measuring the degree of limitation, it means more than moderate but less than extreme.  A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis.

20 C.F.R. pt. 404, subpt. p, app. 1, Listing 12.00C.

**1.  Activities of Daily Living**

Under Listing 12.00C1, "[a]ctivities of daily living include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for [ ] grooming and hygiene, using telephones and directories, and using a post office."  *Id.*, Listing 12.00C1.  The ALJ assesses these activities "by their independence, appropriateness, effectiveness, and sustainability." *Id.*  The ALJ also determines the extent to which a claimant is "capable of initiating and participating in activities independent of supervision or direction."  *Id.*

Martinez claims the ALJ's finding that her activities of daily living are only moderately limited is contradicted by the following evidence.  She testified she "doesn't do anything except go out to dinner once in a while."  Tr. 437-38.  Dr. Sacks noted that she complained of a low energy level. Tr. 415.  She could only sit for about 30 minutes at a time, and would frequently rise due to pain.  Tr. 416.  Her friends take her shopping on the weekends, and although she

9

sometimes prepares her own meals if they are "easy," she also frequently eats at shelters. Tr. 417. Dr. Sacks concluded that she "would have difficulty with staying in the stress or pressures associated with day-to-day work activity at present time because of her depression and somatization." Tr. 418.

The record indicates the following. Dr. Carmen Martin Lara, a psychologist and agency consultant, evaluated Martinez on August 15, 1997. Tr. 355-61. Dr. Lara characterized Martinez as "friendly and pleasant" and reported "[Martinez] looked very healthy and well taken care of. She was clean and well groomed in her hygiene." Tr. 356. Dr. Lara noted the following: "attention span was normal," "her ability to solve problems was normal," "her interests and habits appeared to be, like other normal adults with normal needs." Tr. 356-57.

Dr. Lara assessed Martinez' mental status. Dr. Lara noted the following observations: (1) Martinez' mood was full and revealing; (2) she disclosed strong symptoms of anxiety; (3) she was in contact with reality; (4) she was oriented to time, place, and situation; (5) her speech was clear, logical and relevant; (6) her thought process appeared to be normal; (7) she had no problems retaining thoughts; (7) she did not deviate from the context of the interview; (8) her adaptation to reality was poor; (9) her judgment was normal; (10) her ability to relate to others was normal; (11) there were no signs or symptoms of perceptual disorder; (12) her memory short and long term was intact; (13) the reality test was normal; (14) she reported having no delusions; (15) she reported no persecutory ideation; (16) she reported no visual or auditory hallucinations; (17) she did not report suicidal or homicidal thoughts or ideation. Tr. 359.

As to her activities of daily living, Dr. Lara noted that Martinez reported getting up at 9:00 a.m. and spent her day "exercising and cleaning house a little" but could "only clean for short

periods of time because she "became week (sic) and can't do very much." Tr. 358. Martinez reported that she went to bed at 10:00 p.m. or 11:00 p.m. *Id.* Martinez also reported she was responsible for her home and herself. *Id.* Dr. Lara ultimately concluded that "[s]he has the capability to care for her daily needs, having no problems with regular daily activities." Tr. 361.

On January 6, 2001, Dr. Steven Sacks, a psychiatrist, evaluated Martinez at the agency's request. Tr. 414-18. Dr. Sacks noted the following: (1) her speech was normal in organization, quality, and quantity; (2) there were no delusions, hallucinations, or suicidal ideation; (3) there were no flight of ideas, looseness of associations, or blocking; (4) she was oriented to time, place, and person, and was in touch with reality; (5) remote memory was only fair; (6) she could remember 3/3 unrelated objects; and (7) she could remember 2/3 unrelated objects after 5 minutes. Tr. 416. Notably, Dr. Sacks assigned Martinez a Global Assessment Functioning (GAF) score of 65, indicating "some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful relationships."[2] *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders-Text Revision* (DSM-IV-TR), (4th ed. 2000), p. 34.

As to her activities of daily living, Dr. Sacks noted that Martinez "describes her typical day as awaking between 8 and 9 AM." Tr. 417. Martinez reported doing some walking exercises, then attended to her personal hygiene, and prepared simple meals. *Id.* Martinez also reported

---

[2] The Global Assessment of Functioning (GAF score) is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning." DSM-IV-TR at 30. The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death.). DSM-IV-TR at 32.

washing dishes but claimed she relied on her girlfriends to do her laundry. *Id.* "Martinez' girlfriends also accompany her when she goes grocery shopping, but she is capable of paying her own bills." *Id.* Dr. Sachs also noted that on Saturdays Martinez "relies on numerous girlfriends who apparently drive her to the store or pick her up to bring them to their homes to visit." *Id.* Additionally, Martinez reported sometimes going to the shelter for lunch and/or dinner. *Id.*

The Court also notes that on August 15, 1997, Martinez reported to Dr. Jill Marjama-Lyons, a neurologist and agency consultant, that "she is able to perform all activities of daily living (ADL's), but performs them at a slower rate because of pain." Tr. 325. At that time, Martinez reported her typical day as performing light house cleaning, taking walks, and performing some exercises she learned in physical therapy. *Id.*

The ALJ cited to this evidence in support of his finding that Martinez "has a fairly wide range of activities of daily living, evidencing at most a moderate limitation under Part B1." Tr. 376. Although Martinez points to some evidence that may tend to support her position that she has a marked restriction of activities of daily living, the determinative conclusion is that there is substantial evidence to support the ALJ's finding that she is only moderately limited in her activities of daily living.

## 2.  Social Functioning

Under Listing 12.00C2, social functioning "refers to a [claimant's] capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals." 20 C.F.R. pt. 404, subpt. p, app. 1, Listing 12.00C2. "Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers." *Id.* A claimant "may demonstrate impaired social functioning by, for example, a history

of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, or social isolation." *Id.*

Martinez contends the ALJ erred in finding she had only a moderate limitation in social functioning.  In support of her contention, Martinez points to Dr. Marjam-Lyons' notation that she participated in no social activities and to Dr. Lara's notation that she had a strong dependency on family and friends.  However, the ALJ set out substantial evidence to support his finding.  The ALJ noted that Martinez had "a number of girlfriends," was "able to maintain a relationship with a boyfriend," and, "although she belonged to no clubs or organizations, she was able to attend church occasionally with a girlfriend."  Tr. 377.  The record supports the ALJ's finding.  Martinez reported to Dr. Sacks that she had numerous girlfriends who would drive her to the store or take her to their homes to visit.  Tr. 417.  Martinez reported to Dr. Sacks that she would sometimes go to the shelter for lunch and/or dinner.  *Id.*  Martinez also testified at the April 18, 2001 administrative hearing that she maintained a close relationship with a boyfriend and lived with him for seven years, from 1992 until1998.  Tr. 436.  All these activities reflect a degree of social isolation less marked than that urged by Martinez.

### 3. Episodes of Decompensation

"Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace."  20 C.F.R. pt. 404, subpt. p, app. 1, Listing 12.00C4.  A claimant may demonstrate episodes of decompensation by showing an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation or a combination of the

13

two. *Id.* "Episodes of decompensation may also be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system . . . ." *Id.*

"Repeated episodes of decompensation, each of extended duration" in Listing 12.00 (Mental Disorders) "means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." *Id.* If a claimant experiences episodes of shorter duration or less frequent episodes of longer duration, the ALJ must determine "if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence." *Id.*

Martinez contends the ALJ's finding that there was "no evidence of repeated episodes of decompensation, each of extended duration" is contradicted by Dr. Sacks' findings. According to Martinez, Dr. Sacks noted that she "groaned constantly throughout the interview." Additionally, Martinez contends Dr. Lara noted in her report that she "was anxious and restless, but cooperative." Martinez also relies on Dr. Lyons notation that she "moaned throughout the entire physical exam, as though she is in severe pain . . . ." Finally, Martinez points to several notations by a counselor at the University of New Mexico Manzanita Counseling Center which indicated Martinez either "sobbed," "moaned," "wept" or failed to make eye contact with the counselor during her counseling sessions. *See* Pl.'s Mem. in Supp. of Mot. to Reverse at 8.

As the Commissioner correctly points out, the regulations require more than isolated incidents of "moaning and groaning" to establish repeated episodes of decompensation, each of extended duration. The evidence presented by Martinez in support of her argument does not rise to the level of severity required by the regulations. Accordingly, the Court finds that the ALJ's

finding that there was "no evidence of repeated episodes of decompensation, each of extended duration" is supported by the record.

Martinez also argues that the ALJ failed to accept Dr. Sacks' opinion that "[s]he would have difficulty with staying in the stress or pressures associated with day-to-day work activity at the present time because of her depression and somatization." Tr. 418. This observation was listed under "Clinical Impressions" in Dr. Sacks' evaluation and cannot be construed as a statement that Martinez is precluded from working. Dr. Sacks also opined that Martinez "would be able to understand and carry out short, simple instructions and somewhat more complex instructions." *Id.* In addition, Dr. Sacks opined that Martinez "could maintain the attention required to perform simple repetitive and somewhat more complex tasks." *Id.* In his hypothetical question to the VE, the ALJ incorporated all of Dr. Sacks' clinical impressions, including Dr. Sacks' impression that Martinez would have difficulty with the stress or pressures associated with day-to-day work activity. Tr. 381. The VE testified that Martinez would be able to perform sedentary, unskilled jobs and listed jobs that fit the ALJ's hypothetical question.

## B.  Credibility Determination

Credibility determinations are peculiarly the province of the finder of fact and will not be upset when supported by substantial evidence. *Diaz v. Secretary of Health and Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988). However, the ALJ's credibility determination does not require a formalistic factor-by-factor recitation of the evidence. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ need only set forth the specific evidence he relies on

in evaluating claimant's credibility. *Id.* The ALJ also may consider his personal observations of the claimant in his overall evaluation of the claimant's credibility. *Id.*

Martinez claims the ALJ based his credibility determination "on the fact that doctors have found somatization" and contends this was error. In his decision, the ALJ considered all of the following evidence in finding that Martinez was not entirely credible: (1) "lack of medical treatment;" (2) the fact that she was "not in any type of individual therapy or any type of antidepressant medication;" (3) "she [had] a past medical history that was essentially negative;" (4) "she [had] not been taking medications and [had] no past history of surgery;" (5) her statement "on her Claimant's Recent Medical Treatment form submitted around the time of the most recent hearing indicated she had not seen a doctor in one year;" and (6) her statement "on her most recent Claimant's Medications form that she was taking no prescription medications and that she was taking only Aleve, an over-the-counter medication." Tr. 380.

The ALJ cited extensively to the record and set forth the specific evidence he relied on in evaluating Martinez' credibility. Therefore, the Court finds that the ALJ's credibility determination is supported by substantial evidence and will not be disturbed.

A judgment in accordance with this Memorandum Opinion will be entered.

**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**